UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 22-cr-10050-NMG |
| | ) | |
| ISAEL RODRIGUEZ, | ) | |
| Defendant | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

On January 19, 2024, the defendant, Isael Rodriguez, pled guilty to the Indictment, which charged him with engaging in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (Count One), and making false statements to acquire a firearm from a licensed dealer, in violation of 18 U.S.C. § 922(a)(6) (Count Two), pursuant to a plea agreement with the government. The defendant's sentencing hearing is scheduled for May 20, 2024.

The government recommends, in accordance with the binding plea agreement, that the Court sentence the defendant to 18 months of imprisonment, three years of supervised release, and a $200 special assessment. This recommendation reflects the seriousness of the offense, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

## I.     THE ADVISORY SENTENCING GUIDELINES

In November, 2021, the ATF began investigating the defendant for trafficking in firearms. Investigators learned that the defendant was engaged in the purchasing of firearms in Massachusetts, which he then illegally sold these firearms to at least one prohibited person. All told, the defendant trafficking at least a dozen firearms in this manner. His base offense level is 14. PSR ¶ 29. The defendant receives a four-level enhancement because the offense involved between 8 and 24 firearms. PSR ¶ 30. The defendant is entitled to a three-level acceptance of

responsibility reduction. PSR ¶¶ 36-37. Calculating his criminal history category of level I, U.S. Probation has calculated that the advisory guideline range is 18 to 24 months. PSR ¶ 66.

The government recommends, in accordance with the plea agreement, that the Court sentence the defendant to 18 months of imprisonment, followed by 3 years of supervised release.

## II.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 18 months, followed by 3 years of supervised release, is the appropriate sentence in this case.

### a.  Nature of the Offense

The nature and circumstances of the defendant's gun trafficking justify a significant sentence of 18 months, despite the defendant having no prior criminal history. The threat of guns in modern society is well documented and grows more serious every day. Less well understood, but no less significant, is the fact that the harm caused by the defendant's criminal activity may not be felt for many years to come. This is because the data shows that the average time from the

2

purchase of a new gun to the recovery of the gun at a crime scene ("time to crime") in Massachusetts is *7.88* years.[1]

These data mean that the illegal guns trafficked by the defendant will likely be used in the hands of criminals for the better part of the next decade. [2] Simply by involving a firearm, crimes across the country become much greater in seriousness and harm. Data show that states with more guns have more deaths. [3] Available research demonstrates that the involvement of guns makes quarrels, robberies, domestic disputes, and other conflicts deadlier. Those engaged in violent crime in the United States are not more intent on killing compared to their counterparts in other nations, they merely have better access to powerful tools that make death a more likely outcome of an assault or conflict. [4] As a result, America has seven times as many firearm homicides as Canada, and nearly 19 times as many as France. [5] The rate of murder or manslaughter by firearm is the

---

[1] *See ATF Firearms Trace Data for 2022*, available at: https://www.atf.gov/resource-center/firearms-tracedata-massachusetts-2022 . The Massachusetts data was not an aberration, as the national average was 6.34 years. *Id.*

[2] Of course, several of the guns discussed in the PSR were recovered by the ATF and will remain off the street. Nevertheless, the true harmfulness of this offense can be seen in all the guns not recovered by law enforcement.

[3] German Lopez, VOX, *America's unique gun violence problem, explained in 16 maps and charts,* (August 16, 2021), available at: https://www.vox.com/policy-and-politics/2017/10/2/16399418/america-mass-shooting-gunviolence-statistics-charts

[4] David M. Hureau & Anthony A. Braga, *The Trade in Tools: The Market for Illicit Guns in High-Risk Networks*, CRIMINOLOGY, volume 56 issue 3, (July 18, 2018), available at: https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187

[5] Katherine Leach-Kemon, Rebecca Sirull & Scott Glenn, *On gun violence, the United States is an outlier*, INSTITUTE FOR HEALTH METRICS AND EVALUATION, (October 31, 2023), available at: https://www.healthdata.org/news-events/insights-blog/acting-data/gun-violence-united-states-outlier

highest in the developed world. There were approximately 20,958 deaths as a result of a homicide involving a firearm in 2021. That is approximately 80.5% of all homicides for the year. [6]

More to the point of this investigation, most gang-related murders and felonies involve illegal guns, according to federal crime data. [7] Illegal guns circulating among high-risk networks present a threat to the security and well-being of urban neighborhoods. The supply of illegal gun to those embedded in high-risk networks is a critical mechanism in shaping rates of deadly violence in American cities. [8] The negative impact of guns on society goes beyond death and disability. When an individual is victimized by or exposed to gun violence, it increases the likelihood that they will be victimized again or resort to gun violence themselves. [9] Gun homicides also can have severe economic consequences on communities. Residents of communities impacted by gun violence experience lower property values, fewer business startups, and loss of jobs. One study estimated that surges in gun homicides slowed home value appreciation by four percent relative to communities which did not experience a surge in violence. [10] There are further economic consequences to gunshot injuries, including the immediate hospital costs as well as the lifetime medical care costs including readmission(s) to the hospital and nursing care. Gun violence also financially burdens survivors by diminishing wages and productivity and often results in a mental

---

[6] *America's gun culture in charts*, BBC NEWS, (December 7, 2023), available at: https://www.bbc.com/news/world-us-canada-41488081

[7] *Gun Violence in America*, NATIONAL INSTITUTE OF JUSTICE, (February 26, 2019), available at: https://nij.ojp.gov/topics/articles/gun-violence-america

[8] *Supra* note 4.

[9] *A Nation of Survivors: The Toll of Gun Violence in America*, EVERYTOWN FOR GUN SAFETY, (Updated February 3, 2022), available at: https://everytownresearch.org/reports/nationofsurvivors/

[10] *Id*.

or physical disability. One study estimates the overall societal cost for each gun-related assault at $1.2 million. [11]

### b. Characteristics of the Defendant

The defendant is 29 years old. PSR ¶ 47. The government recognizes that the defendant has strong family support, and that has been highlighted in this case. As a child, the defendant moved to Florida and lived there with family members until 2016, when he returned to Massachusetts. PSR ¶ 47.

The government also acknowledges certain points that are reflected in the PSR. The defendant is a young man, who has earned a high school diploma, graduated from an automotive technology program and has engaged in several employments throughout most of his adult life. PSR ¶¶ 56-61. He certainly has the potential to be a law-abiding member of society, after taking responsibility for his offenses, which he has begun to do by pleading guilty. The government's recommendation takes these attributes into account.

A sentence of 18 months imprisonment, with 3 years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a). Even after serving an 18-month sentence, the defendant will still be a relatively young man with a lot of potential, which the structure of supervised release will help him to achieve.

### c. Specific and General Deterrence

A significant sentence of imprisonment is warranted to deter others from becoming involved in illegal gun dealing. The danger of this conduct is difficult to overstate. Individuals tempted to engage in firearm trafficking must understand that any involvement will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others

---

[11] *Id.*

who might otherwise consider profiting from gun dealing that the money is not worth the punishment. Further, general deterrence must be considered for any other individuals similar to the defendant's status, that dealing in guns is not a gainful way of life.

This is a very serious issue in Massachusetts, a state with very strong gun control laws, where the illegal gun trade still results in a steady supply of illegal guns in urban cities in this state. This is highlighted by the dangers discussed above and the need to punish those involved in providing such dangerous weapons to criminals.  The scourge of gun violence in Boston is also well-documented. Between January 1 and November 22, 2020, Boston recorded 43 fatal shootings and 216 non-fatal shootings. [12] Any sentence in a case such as this must take into account the harms that the proliferation of illegal firearms causes to the community, and the danger that these firearms pose to the community right now.

Considerations of specific deterrence also support imposition of substantial incarceration. The sentence recommended by the government is hopefully sufficient to deter the defendant from resuming a life of gun dealing and that any continued criminal behavior will be met with serious consequences.

**d.  Supervised Release Conditions**

The government also requests a term of 36 months of supervised release. In addition to the standard conditions, the government requests that the Court impose the special conditions set forth in the recommendations made by U.S. Probation, and below, including that the defendant be prohibited from purchasing or possessing any firearms, firearm-related equipment or parts, as well

---

[12] *See* Crime Reported by the Boston Police Department available at: https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/5fbc227ebfc43f74b78432e4/ (last accessed April 27, 2023).

as that the defendant be provided with any available vocational training while in prison and that

he take advantage of any such classes and/or training while on supervised release.

### III.    CONCLUSION

For the foregoing reasons, those contained in the PSR, and those to be presented at the

sentencing hearing, the government requests the following sentence:

- a term of 18 months' imprisonment;

- a fine within the Guidelines sentencing range, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 36 months' supervised release with the conditions referenced above and recommended by probation;

- a special assessment of $200; and

- forfeiture, as set forth in the indictment and plea agreement.


Respectfully submitted,

JOSHUA S. LEVY
UNITED STATES ATTORNEY

By:    /s/ John T. Dawley, Jr.
       John T. Dawley, Jr.
       Assistant U.S. Attorneys


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John T. Dawley, Jr.
John T. Dawley, Jr.

Date: May 14, 2024

7